**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

STEPHEN MICHAEL MOBLEY,      :

      Petitioner,      :      Case No. 3:08cv285
                            Case No. 3:02cr005

     vs.             :
                            District Judge Walter H. Rice
UNITED STATES OF AMERICA,    :      Magistrate Judge Sharon L. Ovington

      Respondent.      :

---

# REPORT and RECOMMENDATIONS[1]

---

This matter is before the Court on *pro se* Petitioner Stephen Michael

Mobley's amended motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or

correct sentence (Case No. 3:02cr005, Doc. #214);[2] Respondent's amended

opposing memorandum (Doc. #219); and the record as a whole.

## PROCEDURAL HISTORY/THE PARTIES' CLAIMS

On January 24, 2003, Petitioner entered a plea of guilty to conspiracy to

distribute and to possess with the intent to distribute in excess of 1000 kilograms

of marijuana.  (Doc. #61).  At the time of Petitioner's plea, with both Petitioner

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Although not expressly stated, all further docket references will be to the docket number assigned in the <u>criminal</u> case.

and his counsel present, the Assistant United States Attorney read into the record

the terms of the Government's plea agreement with Petitioner, as follows in

pertinent part:

> Paragraph 1.  Stephen Michael Mobley, Jr., will enter a plea of guilty to Count 1 of the indictment filed herein . . . Once said guilty plea is entered, accepted and not withdrawn, the United States Attorney for the Southern District of Ohio agrees not to file any additional federal charges in the Southern District of Ohio for [similar drug] offenses . . . occurring during the period of the conspiracy alleged in Count 1 as to [Mobley].

> For Count 1, the maximum penalty the Defendant, Stephen Michael Mobley, Jr., is subject to pursuant to his plea of guilty is a mandatory minium sentence of ten years up to life imprisonment, [etc.].

> Paragraph 2.  Mr. Mobley agrees to cooperate fully with the United States, its agents and employees in providing truthful and complete answers to all inquiries regarding the facts of his case and other criminal offenses of himself and others . . .  Mr. Mobley agrees not to withhold any information.  Pursuant to U.S. Sentencing Guideline [§] 1B1.8, any information he provides concerning the activities of others shall not be used in determining the applicable sentencing guideline range in his case . . .

> * * *

> Paragraph 3.  This agreement is in return for and in reliance on the Defendant's complete cooperation and truthful testimony if needed in the opinion of the U.S. Attorney for the Southern District of Ohio.

The Defendant understands that the Government will recommend to the Court that the base offense level for purposes of the Federal Sentencing Guidelines for Count 1 is level 32 . . . The Government will recommend that the Defendant be given a three-point adjustment for acceptance of responsibility pursuant to U.S. Sentencing Guidelines [§] 3E1.1.

The Defendant agrees that the base offense level of 32 is an accurate calculation of the guideline level . . .  The Defendant understands that he will not be allowed to withdraw his guilty plea if the Court refuses to accept the recommendations contained in this paragraph.

[Paragraph] 4.  If in the opinion of the U.S. Attorney for the Southern District of Ohio the Defendant renders substantial assistance within the meaning of U.S. Sentencing Guideline Section 5K1.1 and 18 U.S.[C. §] 3553(e), the United States will file a motion pursuant to these provisions.  The Defendant acknowledges that, under the law, in terms of this plea agreement, the United States retains sole and complete discretion in determining whether a departure motion based on substantial assistance will be filed.  If such a motion is filed, the Defendant understands that it is not binding on the Court; that is, the Court is not obligated to grant the motion and reduce the Defendant's sentence.

If the Defendant refuses to testify or otherwise provide complete, truthful cooperation, the Government may seek to set aside the Defendant's plea and reinstate the indictment . . .

Nothing that he communicates to the Government in the course of providing substantial assistance shall be used to enhance his sentence.  The Defendant understands that he will not be allowed to withdraw his guilty plea if the United States does not file or if the

Court does not grant a substantial assistance motion.

The Defendant understands that [ ] Federal Rule of Criminal Procedure 35(b) allows the Government to file a substantial assistance motion within one year after the sentence is imposed. The Government will consider the filing of a Rule 35(b) substantial assistance motion if the Defendant fails to provide substantial assistance but later satisfies the requirements of Section 5K1.1 and 18 U.S.[C. §] 3553(e). The United States retains sole and complete discretion to determine whether a Rule 35(b) substantial assistance motion should be filed.

Paragraph 5. The Defendant understands that the Probation Department will conduct a pre-sentence investigation and will recommend to the Court a sentencing guideline range. The Defendant understands that the Probation Department's recommendations are not binding on the Court and the terms of this plea agreement are not binding upon the Court or Probation Department.

* * *

[Paragraph] 11. The Defendant understands that there is no agreement concerning his ultimate sentence. The Defendant could receive the maximum penalty provided by law.

* * *

Paragraph 14. By signing this agreement, Mr. Mobley acknowledges that he has discussed its terms with his attorney and understands and accepts those terms. Further, he acknowledges that this document contains the entire plea agreement between Defendant Stephen Michael Mobley, Jr., and the United States, through its undersigned attorney. No other agreements, promises,

> deals, bargains or understandings exist which modify or alter these terms.  This agreement binds only the U.S. Attorney's Office with the Southern District of Ohio, and it does not bind any other federal, state or local prosecuting authority.

(Doc. #104 at 26-34).  The document was signed by Petitioner, his counsel, and the Assistant United States Attorney.  (*Id.* at 34).  Both Petitioner and his counsel thereafter affirmed their understanding and acceptance of that agreement as read.  (*Id.* at 34-35).

On August 6, 2007, United States District Judge Walter H. Rice of this Court sentenced Petitioner to a 70-month term of imprisonment (Doc. #187), and judgment to that effect was entered against Petitioner the same day.  (Doc. #188); *United States v. Mobley*, No. 02cr005 (S.D. Ohio Aug. 6, 2007).

On August 12, 2008 – without first having filed a direct appeal from his conviction or sentence – Petitioner filed his original motion under 28 U.S.C. § 2255 in this Court.  (Doc. #202).  Petitioner then filed a document apparently addressed to both this Court and the United States Court of Appeals for the Sixth Circuit, entitled "Petition for Sentence Modification" (Doc. #204), which both courts thereafter construed as a Notice of Appeal.  (*See* Doc. ##205, 216).

On November 21, 2008, Petitioner filed an amended motion under 28 U.S.C. § 2255 (Doc. #214), which superseded his original Section 2255 motion.

(*See* Docket Entry dated 8/12/2009).  In that amended motion, Petitioner sets

forth four grounds for relief from his sentence, as follows:

> Ground One: Petitioner's sentencing violated
> constitutional sep[a]ration of powers generally and/or
> as applied to the particular facts of this case in that
> except in two limited areas, not at issue in the instant
> case, does the Constitution permit Congress the ability
> to encroach upon the judicial branch's historic
> prerogative to set the minimum in accordance with the
> wisdom of the judge hearing the case.

(Doc. #214 at 9).

> Ground Two: Petitioner's sentencing violated
> constitutional principles of due process generally
> and/or as applied to the particular facts of this case in
> that the sentencing structure, which limits the ability of
> a defendant to [sic] a sentence below mand[a]tory
> minimum, violates a defendant's constitutional rights.

(*Id.* at 18).

> Ground Three:  Ineffective Assistance of Counsel
>
> . . .  Generally, Petitioner's attorney allowed and became
> a party [ ], whether willing or unwilling, knowingly or
> unknowingly, to prosecutorial misconduct where
> Petitioner's attorney failed to protect Petitioner's due
> process and constitutional rights by allowing the
> following to occur:
>
> (1)    U.S. Attorney failed to inform Petitioner
>        that any conviction through the plea
>        agreement would be or could be subject to
>        mandatory time of incarceration and
>        Petitioner's attorney did not inform

Petitioner that under a plea agreement [ ] such mandatory time would or could apply[,] therefore not giving Petitioner competent and factual information to make a voluntary decision in which to comprehend the fullness of the terms and conditions of the plea agreement; and

(2)     U.S. Attorney failed to disclose that any information procured under the investigation and proffer, in compliance with [the] plea agreement, would be used to charge Petitioner with additional criminal charges (reference: State of Arizon[]a criminal charges) even though Petitioner had to comply with providing information per the plea agreement. Petitioner's attorney did make known such prosecut[or]ial misconduct in the State of Arizon[]a case against Petitioner but failed to inform the U.S. District Court of such misconduct; and

(3)     U.S. Attorney used int[i]midation and deception tactics to force Petitioner to comply with [the] plea agreement and Petitioner's attorney failed to protect Petitioner from the U.S. Attorney's breach of the plea agreement and [ ] therefore fail[ed] to protect Petitioner's right to withdraw his guilty plea[ ] when the U.S. Attorney breached [the] plea agreement, and to prepare and go forward to trial; and

(4)     U.S. Attorney promised 5K, saf[e]ty valve, and acceptance of responsibility downward departures.  Petitioner's attorney never required confirmation or denial of such

departures to be written within the plea agreement or put on the record prior to the sentencing date and [sic] was not written as part of the plea agreement "promises," and

(5)     [ ] U.S. Attorney relayed, through Petitioner's attorney, that if Petitioner complained or contested the sentencing in court, on record, that the U.S. Attorney would move to withdraw the saf[e]ty valve and acceptance of responsibility departures. Petitioner's attorney supported the U.S. Attorney's breach of [the] plea agreement and misconduct by int[i]midation by telling the Petitioner not to complain nor did Petitioner's attorney file a sentencing memorandum stating facts of the plea agreement's compliance or breach by the parties; and

(6)     Petitioner's attorney allowed broad and ambiguous language within the plea agreement which can be construed as bias when Petitioner was recommended by his attorney to remain silent during court and also Petitioner's attorney failed to bring up such ambiguous statements, promises, and terms to be put or not put into the plea agreement clearly during the reading of the plea agreement into [the] court record.

(*Id.* at 24-27).

Ground Four: Conviction obtained by plea of guilty was unlawfully induced and therefore not made voluntarily where Petitioner did not understand the consequences of the plea due to prosecut[or]ial misconduct and ineffective counsel.

(*Id.* at 28).

In addition, with respect to his failure to timely pursue a direct appeal from his sentence, Petitioner asserts in his amended Section 2255 motion that he "asked his legal counsel of record to file for the appeal[,] but [counsel] refused because legal counsel wanted to be paid in advance to file the appeal," although "Petitioner is indigent" and unable to pay legal fees. (*Id.* at 7-8; *see also* Doc. #213).

Before the United States responded to Petitioner's amended Section 2255 motion, the United States Court of Appeals for the Sixth Circuit issued a decision dismissing Petitioner's appeal for lack of jurisdiction, in light of Petitioner's failure to file a timely notice of appeal "on or before August 20, 2007." (*See* Doc. #216); *United States v. Mobley*, No. 08-4487 (6th Cir. Dec. 18, 2008).

On January 29, 2009, the United States filed its memorandum in opposition to Petitioner's amended motion to vacate, correct or set aside his sentence, urging that all of the claims asserted by Petitioner "are either procedurally defaulted or without merit." (Doc. #219 at 1). Respondent contends that Petitioner has failed to demonstrate either his actual innocence or cause for and prejudice from his untimely appeal, resulting in procedural default of all claims that Petitioner could have brought via a direct appeal of his sentence, and thus precluding

Section 2255 relief.  (*Id.* at 2-3).  Additionally, Respondent articulates arguments as to why each of Petitioner's asserted examples of ineffective assistance of counsel purportedly lacks substantive merit.  (*Id.* at 3-14).

## APPLICABLE LAW

### 28 U.S.C. § 2255

A federal prisoner who claims that his sentence was imposed in violation of the Constitution or laws of the United States or "is otherwise subject to collateral attack" may move the sentencing court to vacate, set aside or correct his sentence.  28 U.S.C. § 2255(a).  A one year limitations period applies to such actions.  28 U.S.C. § 2255(f).  Unless the record "conclusively show[s] that the prisoner is entitled to no relief," the court is to hold a hearing, determine the issues, and make findings of fact and conclusions of law.  28 U.S.C. § 2255(b).

If a Section 2255 motion is not dismissed, "the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted . . . to determine whether an evidentiary hearing is warranted."  Rules Governing § 2255 Proceedings, Rule 5(a); *see also Ross v. United States*, 339 F.3d 483, 490-91 (6th Cir. 2003).  Where a factual dispute exists, "the habeas court <u>must</u> hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (emphasis added)

(quoting *Turner v. United States*, 183 F.3d 474, 477 (6ᵗʰ Cir. 1999)), *cert. denied*, ___ U.S. ___, 128 S. Ct. 2944 (2008); *see also Arredondo v. United States*, 178 F.3d 778, 782 (6ᵗʰ Cir. 1999) ("An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief.").

"[T]he burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light." *Valentine*, 488 F.3d at 333 (citing *Turner, supra*); *see also Smith v. United States*, 348 F.3d 545, 551 (6ᵗʰ Cir. 2003). The district court need not conduct an extensive evidentiary hearing in every instance. *See Wright v. United States*, 320 F. App'x 421, 427 (6ᵗʰ Cir. 2009). "Rather, the hearing conducted by the court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made." *Id.* (parenthetical in original) (citing *Smith*, 348 F.3d at 550-51). Accordingly, the reviewing court is to determine what material issues of fact require resolution via an evidentiary hearing.

In most Section 2255 proceedings, "the court may appoint counsel" to represent the petitioner. 28 U.S.C. § 2255(g). "If an evidentiary hearing is warranted," however, "the judge <u>must</u> appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rules

Governing § 2255 Proceedings, Rule 5(c) (emphasis added). Any hearing

determined to be necessary shall be held "as soon as practicable after giving the

attorneys adequate time to investigate and prepare." *Id.*

**Procedural Default**

The provisions of Section 2255 notwithstanding, claims not first raised on

direct appeal generally "may not be raised on collateral review unless the

petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504

(2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Bousley v. United*

*States*, 523 U.S. 614, 621-22 (1998)). Although that "procedural-default rule" is

not a statutory or constitutional requirement, "it is a doctrine adhered to by the

courts to conserve judicial resources and to respect the law's important interest in

the finality of judgments." *Id.*

The Supreme Court nonetheless has found "that requiring a criminal

defendant to bring ineffective-assistance-of-counsel claims on direct appeal does

not promote these objectives." *Id.* As a result, that Court has held that "an

ineffective-assistance-of-counsel claim may be brought in a collateral proceeding

under § 2255, whether or not the petitioner could have raised the claim on direct

appeal." *Id.*; *see also United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005) ("as a

general rule, a defendant may not raise ineffective assistance of counsel claims

for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations") (quoting *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir.2002)); *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990). Accordingly, "in most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro*, 538 U.S. at 504. Federal prisoners who wish to pursue claims for ineffective assistance of counsel thus usually "should do so by way of a collateral proceeding pursuant to 28 U.S.C. § 2255." *Sanders*, 404 F.3d at 986.

In addition, "[w]hen a Defendant alleges that trial counsel failed to file a notice of appeal after being requested to do so, the proper protocol is to conduct an evidentiary hearing" on that issue. *United States v. Calderon*, 194 F.3d 1314 [table], 1999 WL 801587, at *2 (6th Cir. Sept. 27, 1999) (citing *Castellanos v. United States*, 26 F.3d 717, 725 (7th Cir.1994)). At least one federal appellate court has held that "an attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (lawyer who disregards client's specific

instructions to file notice of appeal acts in "professionally unreasonable" manner). Accordingly, as to sentencing issues <u>only</u>, a petitioner need not demonstrate any prejudice beyond the lost opportunity to appeal in order to show that a resultant procedural default should not preclude him from proceeding out of time. *See Montemoino*, 68 F.3d at 417-18.

### Ineffective Assistance of Trial Counsel

The right to counsel provided by the Sixth Amendment presumes that a criminal defendant has "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984)(quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To establish a claim of ineffective assistance of trial counsel, a criminal defendant must make a two-part showing:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687; *see also O'Hara v. Brigano*, 499 F.3d 492, 505 (6th Cir. 2007). To satisfy the prejudice prong, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Overall, the constitutional standard for adequate representation is "an objective standard of reasonableness" in line with "prevailing professional norms." *Strickland*, 466 U.S. at 687-88. Counsel's performance also should be evaluated in light of the totality of the circumstances. *See id.* at 690; *Mason v. Mitchell*, 320 F.3d 604, 618 (6th Cir. 2003).

The *Strickland* standard applies not only to counsel's performance during trial, but also in the context of representation provided during plea hearings, with the second prong focusing on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see Dando v. Yukins*, 461 F.3d 791, 798 (6th Cir. 2006). With respect to claimed deficiencies in representation as to a criminal defendant's sentence, the same *Strickland* factors apply: *i.e.*, the petitioner must show both that his counsel's performance fell below an objective standard of reasonableness, and that absent such shortcoming, the outcome likely would have been different. *See Glover v. United States*, 531 U.S. 198, 204 (2001); *Green v. United States*, 65 F.3d 546 (6th Cir. 1995), *cert. denied*, 516 U.S. 1098 (1996).

A defendant's failure to satisfy either prong of the *Strickland* test obviates the need for the court to consider the other prong. *See Strickland*, 466 U.S. at 697; *see also Stanford v. Parker*, 266 F.3d 442, 454 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002).

## ANALYSIS

### Claims re Plea Agreement

The facts Petitioner offers in support of Grounds One and Two in his amended motion (*see* Doc. #214 at 9-24) illustrate that both such grounds are premised on the Government's alleged failure to abide by the terms of its plea agreement with Petitioner. Respondent argues (*see* Doc. #219 at 2-3) that the voluntariness or intelligence of a guilty plea "can be attacked on collateral review only if first challenged on direct review." *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001) (quoting *Bousley v. United States*, 523 U.S. 614, 621 (1998)); *see also Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000) (holding that federal inmate's failure either at sentencing or on direct appeal to raise government's alleged "failure to adhere to its plea agreement in good faith" amounted to "double default" and resulted in waiver of that claim for purposes of Section 2255 review). Respondent therefore urges that such claims were procedurally defaulted and waived due to Petitioner's failure to pursue a timely direct appeal from his sentence. *See United States v. Mobley*, No. 08-4487 (6th Cir. Dec. 18, 2008).

Respondent is correct in observing that failure to timely raise by direct appeal the issues set forth in Grounds One and Two ordinarily would be deemed a procedural default precluding relief under Section 2255, absent "cause and prejudice or actual innocence." *See Peveler*, 269 F.3d at 698 (citing *Bousley* at 622). But under existing case law, Petitioner's assertion that his trial counsel refused to file a notice of appeal on his behalf (*see* Doc. #214 at 7) would seem to implicate a factual question as to whether Petitioner was denied an opportunity to appeal, thus overcoming any procedural default. *See Montemoino*, 68 F.3d at 417; *Flores-Ortega*, 528 U.S. at 477. Indeed, this Circuit has recognized that ignoring a defendant's request to appeal amounts to "a per se violation of the Sixth Amendment," *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998), "without regard to the probability of success on appeal." In such instances, then, "cause" apparently suffices, even absent proof of prejudice.

Given the "relatively light" burden for establishing entitlement to a Section 2255 evidentiary hearing, *see Valentine*, 488 F.3d at 333, this Court concludes that such a hearing is warranted here, to resolve the material factual issue regarding defense counsel's purported improper denial of Petitioner's opportunity to appeal. Petitioner also is entitled to the assistance of appointed counsel with respect to that issue. *See* 28 U.S.C. § 2255(g); Rules Governing § 2255

Proceedings, Rule 5(c); (*see also* Doc. #213).

Pending the appointment of counsel for Petitioner and an evidentiary hearing to be held "as soon as practicable" after such newly-appointed counsel has had "adequate time to investigate and prepare," *see id.*, Rule 5(c) – matters to be addressed by separate Order of this Court – the Court cannot address the merits of the issues raised in Grounds One and Two of Petitioner's amended motion. (*See* Doc. #214 at 9-24). Those matters therefore will be held in abeyance until after the mandated evidentiary hearing.

### Ineffective Assistance of Counsel Claims

This matter is in a different procedural posture as to the ineffective assistance of counsel claims raised in Count Three and implicated in Count Four of Petitioner's amended motion. (*See* Doc. #214 at 24-30). Although Respondent intimates that Petitioner "has procedurally defaulted <u>all</u> claims" (*see* Doc. #219 at 3) (emphasis added), by then proceeding to address the merits of Counts Three and Four (*see id.* at 3-14), Respondent implicitly concedes doubt as to the defaulted nature of those later claims. In light of the Supreme Court's explicit acknowledgment that "a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance" in most instances, *Massaro*, 538 U.S. at 504, this Court agrees that Petitioner's *pro se* ineffective assistance of counsel claims should be considered on their merits. The analysis to

follow thus will address each alleged example of deficient representation separately.

    *(1) Failure to advise Petitioner of possible mandatory term of incarceration*

In the first argument posed under his "ineffective assistance of counsel" heading, Petitioner contends that neither his counsel nor the Government's attorney informed him that his guilty plea could subject him to a mandatory term of incarceration. (*See* Doc. #214 at 25, Ground Three (1)). Respondent counters that the record contradicts Petitioner's assertion that he was unaware of the mandatory minimum sentence. (Doc. #219 at 7-8).

In order for his plea to be intelligent and knowing, a defendant must be "aware of the direct consequences of the plea," *King v. Dutton*, 17 F.3d 151, 153 (6th Cir.), *cert. denied*, 512 U.S. 1222 (1994), including "the maximum sentence that could be imposed." *Id.* at 154. Similarly, the defendant must be informed of any mandatory minimum sentence that could impact his decision to plead guilty. *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004) (citing *United States v. Stubbs*, 279 F.3d 402, 412 (6th Cir. 2002)).

A defendant's statements during a plea colloquy indicating that he understands the nature and the consequences of the plea "provide strong evidence that a plea was intelligent and knowing." *Boyd*, 99 F. App'x at 703. "When a defendant . . . brings a federal habeas petition challenging his plea, the

state generally satisfies its burden [to show that the plea was intelligent] by producing a transcript of the state court proceeding." *Id.* (quoting *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993)). Courts "are generally wary of a defendant's post hoc claims that she or he subjectively believed the plea agreement to be different." *Id.* "If we were to rely on [the defendant]'s alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statement during the plea colloquy . . . indicating the opposite." *Id.* (quoting *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir.1999)).

The following excerpts from the discussion and colloquy that appear in the transcript of Petitioner's plea hearing effectively refute Petitioner's contentions on this point:

> THE COURT: Mr. Milano, your client, Mr. Mobley, is charged by grand jury indictment with one count, that being conspiracy to possess with intent to distribute [ ] in excess of 1,000 kilograms of marijuana . . . It's the Court's understanding that, pursuant to plea agreement, he will be entering a plea of guilty to that charge with the possibility of a 5K reduction. Is that your understanding?
>
> MR. MILANO: That's correct, Your Honor.
>
> THE COURT: And, Mr. Mobley, is that yours?

THE DEFENDANT: Yes, Your Honor.

(Doc. #104 at 2-3).

\* \* \*

THE COURT [to defense counsel]: Have you come up with a suggested range of sentencing?

\* \* \*

MR. MILANO: Your Honor, based upon an agreement of 32 and a three-point reduction for his acceptance of responsibility, and excluding the 5K, although **there is a 10-year mandatory** that may affect, that would bring him to a 29 . . .

THE COURT: All right . . . There is an agreement, not binding, but a recommendation, certainly, of a base offense level of 32, minus three for acceptance of responsibility. Gets us to 29.

Again, any further reductions other than the possibility of a 5K?

MR. MILANO: I don't believe so, Your Honor.

\* \* \*

THE COURT: . . . **There is a 10-year mandatory minimum** . . .

\* \* \* [discussion between the Court and counsel re Defendant's eligibility for "safety valve" reduction] \* \* \*

THE COURT: . . . **Mr. Mobley, have you had these discussions with your lawyer?**

**THE DEFENDANT: Yes, sir**.

THE COURT: All right.  What **I am going to** do, Mr. Mobley, is **assume**, for sake of argument, **a ten-year mandatory minimum** and work from there.

\* \* \*

THE COURT: **Do you understand . . . that there is what we call a ten-year minimum – in other words, a ten-year required – sentence in this case** which I must impose unless you provide substantial assistance or cooperation to the Government or unless you qualify for what we call the safety valve?  Do you understand that?

**THE DEFENDANT: Yes, sir**.

THE COURT: What I'm then going to do, Mr. Mobley, is, **I'm going to assume a sentencing guideline range of ten years, which is the minimum sentence**, and then I'm going to make my explanation based on that.  And if any time you don't follow what I'm saying, feel free to tell me, and I'll be happy to cover it in a different manner.  Will you do that?

THE DEFENDANT: Thank you.

(*Id.* at 6-9) (emphasis added),

\* \* \*

THE COURT:  . . . Its' very important, Mr. Mobley, that you understand that **there are** four **very limited situations where I don't have to give you a sentence of ten years, or 120 months . . .**

(*Id.* at 10) (emphasis added).

Additionally, while reading the terms of the plea agreement into the record

in Petitioner's presence at his plea hearing, the Assistant United States Attorney recited that agreement's iteration that "**the** maximum **penalty** the Defendant . . . is subject to pursuant to his plea of guilty **is a mandatory minium sentence of ten years** up to life imprisonment."   (*Id.* at 27) (emphasis added).  She also read the plea agreement's assertion that "Defendant understands that there is no agreement concerning his ultimate sentence" and he "could receive the maximum penalty provided by law." (*Id.* at 33).

The exchange below immediately followed that reading of the plea agreement:

> THE COURT:  . . . [Defense counsel], you have heard the reading of the plea agreement.  Is that your understanding of it?
>
> MR. MILANO: It is, Your Honor.
>
> THE COURT: Have you gone over it with your client and explained it to him?
>
> MR. MILANO: I have, Your Honor.
>
> THE COURT: Do you feel he understands it and is prepared to accept it?
>
> MR. MILANO: Yes, I do.
>
> THE COURT: **Mr. Mobley, you have heard the plea agreement being read.  Is that your understanding of it?**
>
> **THE DEFENDANT: Yes, sir**.

**THE COURT: Has [defense counsel] gone over it with you and explained it to you?**

**THE DEFENDANT: Yes, sir**.

THE COURT: Have you read it yourself?

THE DEFENDANT: Yes, sir.

THE COURT: Do you feel that you understand it?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions at all about it?

THE DEFENDANT: No, sir.

THE COURT: Did you sign it?

THE DEFENDANT: Yes, sir.

THE COURT: And do you accept it?

THE DEFENDANT: I accept it.

(*Id.* at 34-35).

As the foregoing illustrates, aside from whatever private conversations they may have had, defense counsel stated on the record, in Petitioner's presence at his plea hearing, that "a 10-year mandatory" sentence applied to Petitioner's guilty plea. (Doc. #104 at 6). In addition, Petitioner himself at least <u>twice</u> expressly affirmed on the record that his counsel <u>did</u> discuss the mandatory minimum sentence with him. (*See id.* at 7, 35). That undercuts Petitioner's

contention to the contrary, and is enough to satisfy the United States's burden of showing that Petitioner's plea was knowing and intelligent with respect to that aspect of the consequences of his plea.  *See Boyd*, 99 F. App'x at 703.

Moreover, even were the Court to credit Petitioner's current claim that his attorney did <u>not</u> inform him of the mandatory minimum sentence, despite strong evidence to the contrary, the district judge's multiple references during the plea colloquy to a 10-year mandatory minimum (*see* Doc. #104 at 7, 8, 9, 10), together with the Assistant United States Attorney's repetition of that mandatory minimum term (*see id.* at 27), clearly put Petitioner on notice of the mandatory minimum sentence which he potentially faced by pleading guilty.  Such references in the record overcome any possible inference that Petitioner had no knowledge of his sentencing exposure and might have insisted on going to trial but for his counsel's alleged oversight.  *See United States v. Nimocks*, 234 F.3d 1270 [table], 2000 WL 1679469, at *5 (6th Cir. Nov. 2, 2000).

As he can establish neither that his counsel committed a serious error nor that he was prejudiced by any such omission, Petitioner cannot maintain a viable ineffective assistance of counsel claim based on his attorney's purported failure to inform Petitioner of the mandatory minimum sentence for the offense to which Petitioner was pleading guilty.  *See Strickland*, 466 U.S. at 687.  Petitioner's Section

2255 filing on that basis therefore lacks merit.

### (2) *Failure to advise this Court of prosecutorial misconduct*

Petitioner next contends that his attorney was ineffective for failing to inform this Court of "prosecutorial misconduct" consisting of the Government's purported failure to disclose to Petitioner "that any information procured under the investigation and proffer" in connection with Petitioner's criminal charges before this Court "would be used to charge Petitioner with additional criminal charges" in Arizona. (Doc. #124 at 25). Respondent counters that information garnered in connection with Petitioner's criminal case in this Court was <u>not</u> the source of later Arizona charges against Petitioner, which charges the Government asserts "resulted from an independent investigation by law enforcement authorities in the state of Arizona." (Doc. #219 at 9).

As read into the record at Petitioner's plea hearing, the terms of Petitioner's plea agreement with the Government specifically provided that the United States Attorney for this District would not "file any additional federal charges in th[is District] for [related] offenses . . . occurring during the period of the conspiracy alleged" (Doc. #104 at 27), and that "[n]othing that [Petitioner] communicate[d] to the Government in the course of providing substantial assistance" would be "used to enhance his sentence." (*Id.* at 30). The plea agreement further stipulated that it was intended to bind <u>only</u> the U.S. Attorney's Office in <u>this</u> District, and

thus did "<u>not</u> bind any other federal, state or local prosecuting authority."  (*Id.* at

34) (emphasis added).  Petitioner's contention that information procured through

his cooperation here was used by Arizona authorities to file charges against him

there would not seem to violate these terms of his plea agreement.

Nevertheless, the appellate court for this Circuit has recognized that a

defendant "is entitled to presume that a plea agreement would confer <u>some</u>

benefit on him."  *United States v. Randolph*, 230 F.3d 243, 250 (6th Cir. 2000)

(emphasis in original).  Accordingly, even if only the court that accepted a

defendant's guilty plea is bound by the terms of the underlying plea agreement,

the pleading defendant "could reasonably infer that the results of [the]

prosecutors' investigation [in that case] would not be handed over to prosecutors

from other jurisdictions not bound by the agreement."  *Id.*

Such an inference, however, "would hold true with regard only to offenses

the [ ] prosecutors [involved in the plea agreement] knew about at the time they

entered into the agreement [ ]; th[ose same] prosecutors would not, of course, be

barred from sharing information with other jurisdictions concerning newly

discovered offenses, just as they would not be barred from prosecuting [the same

defendant] themselves for offenses they learned of only after his cooperation

with the government."  *Id.*  The Court in *Randolph* continued:

The constitutional guarantee of due process requires us to give weight to [a defendant's] reasonable expectation that the plea agreement protected him from prosecution for [certain] charge[s] with which he was indicted in the [court where he pled], both within that jurisdiction as provided in the text of the plea agreement and in addition without that jurisdiction, <u>unless</u> <u>founded</u> <u>on</u> <u>an</u> <u>investigation</u> <u>independent</u> of that performed by the [ ] authorities [in the original district].

*Id.* at 251 (emphasis added). Where charges later brought in another jurisdiction are "entirely dependent upon" the first jurisdiction's investigation, a pleading defendant's subsequent prosecution in a different jurisdiction may be "entirely barred by the plea agreement he entered into" in the original jurisdiction. *Id.*

Here, the evidence of record does tend to support Respondent's argument that the Arizona indictment against Petitioner was <u>not</u> dependent on information acquired through Petitioner's cooperation in this case. (*See* Doc. #219 at 9-10). The lead Drug Enforcement Administration ["DEA"] agent in the Ohio case testified that when he asked Petitioner about the Arizona case, Petitioner denied that he had any involvement, and the conversation ended. (*See* Doc. #101 at 59, 65-66). As District Judge Rice acknowledged, that agent's testimony (*see id.* at 41-42, 66-70) also indicated that "the activity alleged in the indictment out of Arizona <u>occurred</u> <u>after</u> <u>the</u> <u>end</u> <u>of</u> <u>the</u> <u>conspiracy</u> <u>in</u> <u>our</u> <u>case</u>" and related to conduct allegedly undertaken in a different city. (Doc. #127 at 2) (emphasis

added). A subsequent prosecution under those circumstances would be seem to offend neither the terms of Petitioner's plea agreement nor the reasoning of *Randolph*, 230 F.3d at 250 (inference against sharing information developed through plea agreement cooperation "would hold true with regard only to offenses [prosecutors involved in plea agreement] knew about at the time they entered into the agreement").

Additionally, although a DEA agent from the Arizona case also testified before District Judge Rice with counsel for all parties present and permitted to question the agent (*see* Doc. #170), Petitioner has identified no evidence developed at such hearing that would suggest that the Arizona indictment "was entirely dependent upon" information acquired through his cooperation in the Ohio case. *See Randolph* at 251. Indeed, to the contrary, that agent's testimony indicated that Petitioner's charges in Arizona arose from an investigation conducted by the DEA and other law enforcement agencies in Phoenix. (*See* Doc. #170 at 13-48). Petitioner thus offers no proof of the factual underpinning on which his contention rests – *i.e.*, that his cooperation here was used against him in Arizona.

Failure to object to prosecutorial misconduct does not constitute ineffective assistance of counsel where the record does not show that the prosecutor acted

improperly.  *See* Mason, 320 F.3d at 618.  Even more telling for purposes of the inquiry here, though, the lack of evidence to substantiate Petitioner's contention does <u>not</u> appear to be attributable to any professional deficiency of Petitioner's counsel.  For example, defense counsel requested and was granted an opportunity to examine the Ohio DEA agent (*see* Doc. ## 82, 101), thereby assuring that this Court was made aware of the possible implications of Petitioner's cooperation here with respect to the pending Arizona case.  (*See* Doc. #127 at 2; *see also* Doc. ##82, 101, 129, 170).  Despite vigorously cross-examining that agent about the connection between the Ohio and Arizona cases (*see* Doc. #101 at 66-70), however, Petitioner's attorney was unable to develop evidence to substantiate Petitioner's suggestion that the fruits of his cooperation in this Court improperly were "used to charge Petitioner with additional criminal charges" in Arizona.  (*See* Doc. #214 at 25).  The performance of Petitioner's counsel thus did <u>not</u> fall below the standard of reasonableness articulated in *Strickland*.

Finally, the record also indicates that the Arizona charges against Petitioner were dismissed.  (*See* Doc. # 127 at 4, 8; Doc. #129 at 3-4; Doc. #170 at 3, 60-61; *see also* Doc. #219 at 10, n.2) ("As of the filing of this motion, the [Arizona] charges against [P]etitioner have not been reinstated.").  Accordingly, any alleged deficiency on the part of Petitioner's attorney in this regard apparently has not

resulted in any actual prejudice to Petitioner.  For all of these reasons, Petitioner's ineffective assistance of counsel claim must fail as to this issue.

> *(3)  Failure to protect Petitioner from intimidation, deception and breach of plea agreement/to protect right to withdraw plea*

> *(4)  Failure to require plea agreement's downward departure "promises" to be in writing or on record*

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled."  *Cohen v. United States*,  593 F.2d 766, 771-72 (6th Cir.1979) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).   In order to maintain a viable claim for breach of a plea agreement, however, a defendant must identify a specific "<u>promise</u>" that the prosecution failed to fulfill.  *See Wright v. Lafler*, 247 F. App'x 701, 707 n.5 (6th Cir. 2007) (emphasis in original), *cert. denied*, ___ U.S. ___, 128 S. Ct. 2509 (2008). Because both the third and fourth of Petitioner's Ground Three ineffective assistance of counsel contentions allude to "promises" purportedly broken by the Government (*see* Doc. #214 at 25-26), the Court has chosen to address those allegations simultaneously.

As set forth *supra*, Petitioner's understanding with the Government that led to his guilty plea was recorded in a formal plea agreement.  (*See* Doc. #104 at 26-34).  By its very terms, that written plea agreement, as read aloud at Petitioner's

plea hearing, "contains the entire plea agreement between Defendant Stephen Michael Mobley, Jr., and the United States," and "[n]o other agreements, promises, deals, bargains or understanding exist which modify or alter these terms." (*Id.* at 34) (emphasis added). Petitioner both signed and verbally accepted the plea agreement's terms to that effect. (*Id.* at 34, 35). In response to a direct question from the Court, he also denied that "anybody at all" had given him "any promises in return for [his] plea of guilty," except for "the plea agreement." (*Id.* at 37).

The United States Court of Appeals for the Sixth Circuit has recognized that an "integration clause" like that contained in Petitioner's plea agreement – *i.e.*, a plea agreement provision restricting that agreement's terms "to those written within its four corners" – "normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2003) (citing *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994)). Because the inclusion of such integration clause language effectively renders his plea agreement "final and immune to collateral attack," *see Hunt*, 205 F.3d at 936, consideration of Petitioner's breach of plea agreement allegations is limited to those specific promises incorporated into Petitioner's

written plea agreement.

Among such written promises (*see* Doc. #104 at 26-34), the only ones that Petitioner mentions as a basis for his "breach" claim are those provisions relating to 5K, "safety valve" and acceptance of responsibility downward departures. (*See* Doc. #214 at 26, ¶4). As to those provisions, the evidence of record once again refutes the factual premise underlying Petitioner's position. Respondent argues (*see* Doc. #219 at 11-12) and the record seems to reflect (*see* Doc. #104 at 6-7; Doc. ##177, 178) that Petitioner <u>did</u> receive the benefit of safety valve and acceptance of responsibility downward departures at the time of sentencing, receiving a 70 month sentence rather than the "mandatory minimum" of 10 years. (*See* Doc. ## 187, 188). Significantly, Petitioner has filed nothing to contradict that conclusion. Accordingly, the Government cannot be said to have breached the plea agreement as to those provisions.

As to any 5K downward departure for substantial assistance, the plea agreement twice expressly stated that the United States "retain[ed] sole and complete discretion" to determine whether a motion for a downward departure based on substantial assistance would be filed. (Doc. #104 at 29, 30-31).[3] Where a

---

[3]Indeed, District Judge Rice reinforced to Plaintiff the contingent nature of any such sentence reduction, referring to "the <u>possibility</u> of a 5K reduction." (*Id.* at 2-3) (emphasis added); (*see also, e.g., id.* at 12-13).

plea agreement "makes clear that the Government retains complete discretion to determine whether to file a motion for downward departure in return for substantial assistance, the Government's refusal to recommend a downward departure can only be reviewed for unconstitutional motives." *United States v. Stonerock*, No. 07-3739, 2010 WL 273809, at *5 (6th Cir. Jan. 26, 2010) (footnote omitted) (citing, *inter alia,* *United States v. Gates*, 461 F.3d 703, 711 (6th Cir. 2006); *United States v. Hawkins*, 274 F.3d 420, 428 (6th Cir. 2001)). If the Government declines to file a substantial assistance motion, however, it must establish that the <u>defendant</u> breached the plea agreement. *See Stonerock*, 2010 WL 273809, at *5.

In this case, when the Government declined to file a 5K motion (*see* Doc. #101 at 9-10), Petitioner's counsel did so on his behalf. (*See* Doc. #82). At defense counsel's behest (*see id.*), the Court conducted a hearing at which the lead DEA agent on Petitioner's case in this District testified at some length about the nature and extent of any "assistance" provided by Petitioner in this case. (*See* Doc. #101 at 52-84). That agent characterized the information provided by Petitioner as "somewhat limited" (*id.* at 53); Petitioner "claimed to have no knowledge of who the marijuana was being distributed to." (*Id.* at 55). The agent also testified that at a later scheduled meeting, Petitioner "brought some documentation but not

specifically what [the agent] had requested." (*Id.* at 58).[4] The agent "didn't find [that meeting] to be very productive at all" because "[t]here was no new information relayed that was able to help me further my investigation." (*Id.* at 59). The agent did <u>not</u> believe that the information Petitioner provided was complete and truthful, nor did it equate to substantial assistance, in his opinion. (*Id.* at 60).

In light of similar testimony from the same DEA agent, the Sixth Circuit in *Stonerock* found that the Government had "met its burden of showing" that Petitioner's co-conspirator had failed to provide substantial assistance. *Stonerock*, 2010 WL 273809, at *6. The same conclusion follows here. No reasonable basis exists for concluding that the Government breached its plea agreement with Petitioner or violated his constitutional rights by declining to file a discretionary 5K downward departure motion on his behalf.

Even more compelling, however, is the evidence of defense counsel's effectiveness as to the 5K issue. In addition to filing a 5K motion when the Government refused to, Petitioner's counsel moved to compel the DEA agent's testimony (Doc. #82) and extensively cross-examined that agent about specifics of Petitioner's cooperation as well as his fears about cooperating after being

---

[4]Indeed, according to the agent's testimony on that date, Petitioner <u>still</u> had not provided the specific information the agent had requested. (Doc. #101 at 60).

identified in a newspaper as an informant.  (*See* Doc. #101 at 61-80, 83-84).

Because the record adequately demonstrates that the Government did <u>not</u> breach the written provisions of the plea agreement <u>and</u> that Petitioner's attorney also provided reasonable representation as to the downward departure issues raised by Plaintiff's Section 2255 motion, Petitioner has not stated a claim for ineffective assistance of counsel related to any supposed "breach" of the plea agreement by the Government.

Although the foregoing analysis disposes of subparagraph 4 as well as the "breach" allegations of subparagraph 3 of Petitioner's ineffective assistance of counsel claim, Petitioner also suggests that his attorney was ineffective because he allowed the Government to manipulate Petitioner into complying with the plea agreement, and failed to assist Petitioner in withdrawing his plea.  (Doc. #214 at 25-26).  Once again, Petitioner has not convincingly demonstrated the basic factual premises on which his challenge is predicated.  When the plea agreement in its entirety was read into the record at the time of Petitioner's plea, Petitioner affirmed his understanding and acceptance of the terms of that agreement.  (*See*  Doc. #104 at 26-35).  Included in the plea agreement was a provision specifying that Petitioner "w[ould] not be allowed to withdraw his guilty plea if the United States does not file . . . a substantial assistance motion."

(*Id.* at 30).  The plea colloquy also included the following exchange between

District Judge Rice and Petitioner:

> THE COURT:  . . .  Now, Mr. Mobley, other than in the plea agreement, has anybody at all made you any promises in return for your plea of guilty this afternoon?
>
> THE DEFENDANT:  No, sir.
>
> * * *
>
> THE COURT: Has anybody promised you a particular sentence in terms of months or years?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone told you that I would do or go along with whatever the Government asked me to do?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone told you that if I didn't do what the Government asked me to do that you could withdraw your plea of guilty and start all over again?
>
> The DEFENDANT: No, sir.
>
> * * *
>
> THE COURT: **Are you pleading guilty to this conspiracy charge voluntarily**?
>
> **THE DEFENDANT: Yes, sir**.
>
> THE COURT: Are you pleading guilty to it because you

feel that you are guilty of it?

THE DEFENDANT: Yes, sir.

THE COURT: Now, this is a repeat, sir, of an earlier question. Other than the plea agreement, has anybody at all made you any promises in return for your plea of guilty?

THE DEFENDANT: No, sir.

(*Id.* at 35-37) (emphasis added).

After this exchange, Petitioner entered his plea of guilty. (*Id.* at 41). Based on his own observations, District Judge Rice accepted Petitioner's plea, specifically finding, in part, that Petitioner

. . . understands the nature of the charge to which the plea is offered and the penalties provided by law; . . . understands his constitutional rights, and he knowingly and intelligently gives them up; . . . is aware of the plea agreement made in his behalf, and it is acceptable to him; . . . has offered to plead guilty voluntarily because he is, in fact, guilty as charged.

(*Id.* at 39).

In now seeking to persuade this Court that his participation in the plea agreement was a product not of his own free will but of the Government's "int[i]midation and deception" (Doc. #214 at 25-26), Petitioner faces the substantial hurdle of overcoming his previous representation to this same Court that he entered his plea "voluntarily" (*see* Doc. #104 at 37) in reliance on his

understanding of the terms of the plea agreement as read into the record at his plea hearing.  (*See id.* at 35).  When the record of a plea hearing reveals that the defendant's guilty plea was "knowing and voluntary," no evidentiary hearing is necessary as to that defendant's later Section 2255 challenge to his plea.  *See Baker v. United States*, 781 F.2d 85, 92 (6th Cir.), *cert. denied*, 479 U.S. 1017 (1986).  A defendant's claim that he was coerced into pleading guilty "is undermined by his assertions at the plea hearing that his plea was voluntary."  *United States v. Jarrar*, 99 F. App'x 726, 729 (6th Cir. 2004) (citing *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.1993) ("[A] defendant who expressly represents in open court that his guilty plea is voluntary may not ordinarily repudiate his statements to the sentencing judge.")).  In light of the record, this Court finds no basis for a claim that Petitioner's guilty plea was induced by prosecutorial intimidation.

Petitioner's additional, unelaborated suggestion that the Government forced his compliance through "deception" (Doc. #214 at 25) again seems to imply that the Government failed to honor some representation on which Petitioner relied.  Having previously concluded, *supra*, that Petitioner cannot maintain a claim premised on any purported promise not contained in the written plea agreement, the Court likewise concludes that no claim will lie for alleged "deception" in the form of an unwritten representation made outside of

the plea agreement itself. *See Hunt*, 205 F.3d at 935. In this regard, too, Petitioner's ineffective assistance of counsel claim must fail.

Finally, the foregoing findings also are fatal to Petitioner's additional suggestion that his trial attorney was ineffective for "fail[ing] to protect Petitioner's right to withdraw his guilty plea." (Doc. #214 at 26). Petitioner has not alleged or shown that he ever asked counsel to pursue a motion to withdraw his plea. Moreover, "[w]hen a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise," and the defendant would bear the burden of proving that he is entitled to withdraw his plea. *United States v. Wilson*, 351 F. App'x 94, 95-96 (6th Cir. 2009) (quoting *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006)). Petitioner here knowingly and voluntarily acknowledged his guilt (Doc. #104 at 37), and accepted a plea agreement providing that it could not be withdrawn for failure to receive a substantial assistance reduction. (*Id.* at 30). His Section 2255 motion has not presented and the record does not reveal any valid grounds for withdrawing his guilty plea. Accordingly, he was not denied effective assistance of counsel with respect to his right to withdraw that plea.

(5) *Complicity in agreement breach/failure to file sentencing memorandum*

Petitioner next contends that his attorney "supported" the Government's

breach of the plea agreement by instructing Petitioner "not to complain" and by failing to file a sentencing memorandum regarding Petitioner's purported substantial assistance and the Government's alleged breach. (Doc. #214 at 26-27). Having previously concluded that Petitioner has not shown that the Government breached the plea agreement, the Court likewise concludes that his counsel cannot have been ineffective by "supporting" a non-existent breach, or for omitting to file a memorandum opposing such.

In addition, as Respondent's argument attests, Petitioner's counsel undertook reasonable actions to assure that the Court was cognizant of all significant factors pertinent to the sentence that Petitioner received. (*See* Doc. #219 at 12). Petitioner has not shown that his counsel's performance fell below reasonable professional standards in that regard, and he also suffered no demonstrable prejudice as a result of his attorney's failure to file a sentencing memorandum. As such, he has not stated a claim for ineffective assistance of counsel on that basis. *See Strickland*, 466 U.S. at 687.

### (6) *Failure to cure ambiguity of plea agreement*

Claiming that his plea agreement contained "broad and ambiguous language," Petitioner also asserts that his trial counsel performed deficiently by failing to cure that ambiguity and by instructing Petitioner "to remain silent" about such. (Doc. #214 at 27). Once again, the transcript of the plea hearing

undermines Petitioner's assertions.

"[P]lea agreements are interpreted and enforced pursuant to contract principles." *United States v. Ross*, 245 F.3d 577, 582 (6th Cir. 2001) (citing *United States v. Robison*, 924 F.2d 612, 613-14 (6th Cir. 1991)). The plain language of Petitioner's written plea agreement, as read into the record at the time of his plea hearing, specifies that all of that agreement's terms are contained therein. (*See* Doc. #104 at 34). Petitioner's motion never identifies what specific provisions of that written agreement he claims are "broad" or "ambiguous" (*see* Doc. #214 at 27), nor does this Court's review reveal any terms that would appear to be open to interpretation as overly broad or ambiguous under applicable principles of contract construction. As such, Petitioner's counsel cannot be said to have performed below applicable professional standards by allowing Petitioner to enter into a plea agreement with the language that appears in the agreement at issue here.

Petitioner's additional allegation that his counsel "recommended" that he "remain silent" during his plea hearing (*see id.*) does not change the consequences of Petitioner's guilty plea in accordance with those written terms. Having affirmed on the record that his plea was informed and voluntary (*see* Doc. #104 at 35-37), Petitioner's current *ad hoc* claims contradicting his prior statements are

unpersuasive.  *See Boyd*, 99 F. App'x at 703.

> *Ground Four: that Petitioner's "conviction obtained by plea*
> *of guilty was unlawfully induced and therefore not made*
> *voluntarily when Petitioner did not understand the*
> *consequences of the plea due to prosecut[or]ial misconduct*
> *and ineffective assistance.*

In this final, catch-all ground set forth in his Section 2255 motion, Petitioner

again attempts to attack the validity of his guilty plea by alluding to prosecutorial

misconduct and ineffective assistance of counsel as having eroded his ability to

understand the consequences of his plea.  (Doc. #214 at 28).  As factual support

for that broad allegation, Petitioner merely refers back to the allegations

supporting Grounds One, Two and Three of his motion.  (*See id*.).

As this Court already has determined, *supra*, that Petitioner has not

articulated any viable claims for prosecutorial misconduct or ineffective

assistance of counsel with respect to Ground Three of his Section 2255 motion,

the Court likewise concludes that Plaintiff cannot maintain a viable Section 2255

motion under Ground Four based upon those same underlying allegations.

Ground Four of Petitioner's motion thus also lacks merit.

**IT THEREFORE IS RECOMMENDED THAT:**

1) Petitioner Stephen Michael Mobley's amended motion to vacate, set aside or correct sentence (Case No. 3:02cr005, Doc. #214) be DENIED with prejudice and DISMISSED as to Grounds Three and Four <u>only</u> of such motion; and

2) This matter remain on the docket of this Court as to Grounds One and Two <u>only</u> of Petitioner's amended motion to vacate, set aside or correct sentence (Case No. 3:02cr005, Doc. #214), pending an evidentiary hearing to be held before the undersigned, in accordance with an Order to issue separately.


May 6, 2010                                  <u>    s/Sharon L. Ovington    </u>
                                                  Sharon L. Ovington
                                         United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).